(60 South. 203.)

No. 19,131.

Succession of FARRELL et al.

(Nov. 18, 1912. Rehearing Denied Dec. 16, 1912.)

*(Syllabus by the Court.)*

1. EXECUTORS AND ADMINISTRATORS (§ 510*)—HOMOLOGATION OF ACCOUNT.

An appeal by the presumptive heir, at a subsequent term, from decrees homologating the final account of the executors and discharging them from their trust on proof of payment of debts and legacies, comes too late.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2235–2256; Dec. Dig. § 510.*]

2. EXECUTORS AND ADMINISTRATORS (§ 510*)—ACCOUNTS—APPEAL—PARTIES—CREDITORS.

Creditors interested in maintaining a judgment homologating an account are necessary parties to an appeal therefrom.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2235–2256; Dec. Dig. § 510.*]

3. WILLS (§ 364*)—PROBATE OF WILL.

The presumptive heir may take and prosecute a devolutive appeal at any time within the year, and even after the discharge of the executors, from a judgment overruling his opposition, on the ground of forgery, to the probate of an instrument presented as the last will of the deceased, on citing all the legatees named in the purported testament.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 828, 829; Dec. Dig. § 364.*]

4. WILLS . (§§ 289, 302*)—PROBATE—BURDEN OF PROOF—SUFFICIENCY OF EVIDENCE.

In a contest over an olographic will, the probate of which has been resisted as soon as the instrument was presented. the burden of proof of the validity of the will is on the proponents. In such a case, the codal rule that proof by at least two credible witnesses of the writing and signature of the testator is sufficient has no application, and all legal modes of proof and relevant facts and circumstances must be considered.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 653–661, 575, 581, 700–710; Dec. Dig. §§ 289, 302.*]

Appeal from Twelfth Judicial District Court, Parish of Sabine; Don E. Sorelle, Judge.

In the matter of the succession of John Farrell, deceased. From a decree probating the last will of decedent, opponents Ed. Farrell and others appeal. Reversed and rendered.

Thomas C. Armstrong, of Pleasant Hill, for appellants. Slattery & Slattery, of Shreveport, John H. Boone, of Many, and Alexander & Wilkinson, of Shreveport, for appellee.

LAND, J. John Farrell, an old bachelor farmer, died at his residence in the parish of Sabine, on August 22, 1910. His heirs were not known, and, no will being found, his succession was opened as intestate. Wm. J. Etheridge and Henry J. Free, neighbors of the deceased, were appointed and qualified as curators of the estate. Later a paper purporting to be an olographic will of the deceased was produced in open court, and the probate of the document was opposed by Ed. Farrell, claiming to be a half first cousin of the deceased and next of kin, and also by the attorney for absent heirs, on the ground that the instrument was a forgery. The opposition was tried, and a decree was rendered

overruling the opposition and probating the document as the last will of the deceased. By the same decree the curators were appointed coexecutors of the will under their bonds as joint curators. The opponents obtained an order for a suspensive and devolutive appeal from the judgment, but the appeal was never perfected by the giving of bond and security.

Without opposition from the attorney for absent heirs, or from Ed. Farrell, the coexecutors administered the succession and rendered their final account, which was duly homologated. On proof of the payment of the debts of the estate, and the satisfaction of all the legacies contained in the will, the co-curators and coexecutors were discharged from their trust, and their bond was canceled, by a decree of date June 10, 1911. On September 15, 1911, the said Ed. Farrell and the attorney for absent heirs obtained an order for a devolutive appeal from the decree probating the will, from the decree homologating the final account of the coexecutors, and from the decree discharging them from their trust and canceling their bond. The appellants caused to be cited the co-curators and coexecutors, and all the legatees and beneficiaries named in the will, but did not cause to be cited any of the creditors named on the final account.

The appellees have moved to dismiss the appeal.

#### Motion to Dismiss.

The grounds of the motion to dismiss are, in effect:

(1) That the appeal came too late after the succession had been closed, and the coexecutors discharged from their trust.

(2) For lack of proper parties, the former representatives of the succession having been discharged by judgment of the district court.

(3) Acquiescence by silence and inaction in all the probate proceedings subsequent to the dismissal of the opposition of appellants.

[1, 2] We notice, on our own motion, that the creditors whose claims are recognized on the final account, and who have been paid, have not been made parties to the appeal. Hence the appeal from the judgment of homologation must be dismissed. Succession of Guillebert, 117 La. 371, 41 South. 653. The appeal in this case was taken at a subsequent term after all the debts of the succession had been paid and the co-curators and coexecutors had been discharged from their trust. When said appeal was taken, there were no parties in interest before the court, as the succession representatives had been discharged, and the creditors, having been all paid without opposition, had disappeared entirely from the scene. In re Furniture Co. in Liquidation, 105 La. 123, 29 South. 488. The mortuary proceedings were closed and could not be reopened. Atkinson v. Rodney et al., 35 La. Ann. 313. In such a case the right of claimants must be asserted and enforced against the heir or legatee, whoever he may be, that was recognized and put in possession of the estate. Id.

[3] In the case at bar the appellant cited all the legatees under the will to answer the appeal. As the appellant had a right of appeal, and has cited all the legatees having an adverse interest, we are of opinion that his appeal from the decree probating the will should be sustained.

It is therefore ordered that the motion to dismiss be maintained as to the decree homologating the final account of the coexecutors, and discharging them from their trust, but be overruled as to the decree probating the will.

#### On the Merits.

[4] The only question before the court is whether the evidence is sufficient to prove that the paper purporting to be the olographic testament of the decedent was entirely written, dated, and signed by the hand of the testator. Civil Code, art. 1588. The law

requires that such a testament must be "proved by the declaration of two credible persons who must attest that they recognize the testament as being entirely written, dated and signed in the testator's handwriting," and requires the judge to satisfy himself that the witnesses are familiar with the testator's handwriting. Civil Code, art. 1655, as amended by Act 119, 1896, p. 168.

The purported will reads as follows, viz.:

"8/16/1910.

"At my death it is my Will that the sister of charity of Shreveport have my land except 40 acres on the north side of sanigill known as the Monroe place that to go to henry Free.

"Money you will find 786.00 in Shreveport B. 300 three hundred in sodus one hundred and sixty-nine in my purse in trunk one hundred in cash to Free 100 to Mrs. Mid Rembert 100 to Mrs. Wm. Etheredge for kindness 100 to R. L. Armstrong 150 to Wm. Etheredge for services rendered in 1908 while sick balance to be used in building Union church at progress. horses big black mare to henry Free him to pay britt for colt young mare to Mid Rembert other black mare to Mrs. Wm. Etheredge red mare to old darkey Baley.

"cattle 35 head 6 head sold to Bowden 5 to hardee balance to be divided between cap Free and dee Etheridge other stuff not mentioned to be sold and go to pay party taking estate in charge.                    [Signed]  John Farrell."

We note that this document in several respects is not correctly copied in the transcript on page 10.

After the death of John Farrell, search was made for a will, but none could be found. Some weeks later, it is claimed by proponents that the document in question was found by the minor son of Wm. Etheridge in a spectacle case in the bedroom of the deceased.

We make the following extracts from the testimony of Henry Free:

"Q. Were you familiar with John Farrell's handwriting?

"A. Only tolerable. I have seen it, but have never noticed it in particular. I have seen him sign his name frequently.

"Q. Now, from what you know of his handwriting, would you be willing to state that instrument before you was written by Mr. Farrell?

"A. Yes, sir.

"Q. Entirely dated and signed by him?

"A. Yes, sir."

Mr. Eugene Harding, bookkeeper of Foster & Glassell Company of Shreveport, with which John Farrell had transacted business for a number of years, testified that he had seen Farrell sign his name to sundry receipts and had also seen a number of letters or written orders from Farrell to his company, and, from the knowledge thus derived, recognized the document in question as entirely written, dated, and signed in the handwriting of the deceased. The same witness stated that at the time of the death of John Farrell there was at his credit on the books of Foster & Glassell Company the sum of $770, with interest, at the rate of 7 per cent. from a date the witness could not recall.

Mid. Rembert, one of the legatees, testified that he had seen John Farrell write and sign his name, and was more familiar with his handwriting than most anybody else, and that, to the best of his knowledge and belief, the purported will was in the handwriting of the deceased.

T. C. Armstrong testified that he was familiar with John Farrell's handwriting, but more familiar with his signature, and did not believe that the purported will was written and signed by the deceased.

The other witnesses who testified on the subject of the handwriting of the purported will had never seen the deceased write, or sign his name. Their testimony was in the nature of expert opinion based on a comparison of handwritings. None of these witnesses were experts in handwriting in the proper sense of the term, but they differed from one another as experts usually do. One of them, a banker of experience, testified that, in his opinion, the purported will was wholly written, dated, and signed by the testator. Another testified that the signature to the will was genuine, but could not say as to the body of the instrument. Others did not think the will genuine.

The will purports to have been written on August 16, 1910. On that day the deceased was confined to his room and bed by a sickness which proved fatal six days later, and was attended nearly all the time by one or another of his neighbors. Later, the making of a will was suggested by his attending physician. The deceased did not say on that occasion that he had already made his will.

A notary was called in on the day of the death of the deceased, but found him in no fit condition to make a will. Every one thought that the deceased had died intestate. After a search no will was found. A month or so later the document in question was produced.

The purported will is written in lead pencil on both sides of a sheet of common tablet paper of note size. The date of the month is expressed by the numeral "8." All the witnesses agree, and our examination confirms the fact, that in all of the genuine writing of John Farrell, where dates appear, the *month* is invariably written in full or in abbreviated form. The genuine letters of John Farrell brought up with the transcript are written in pen and ink, and the handwriting is perceptibly larger and freer than the writing in the purported will. There are minor differences in penmanship and orthography which need not be detailed.

The property of the deceased was inventoried on August 26, 1910, and among the items appear:

"I cash bal. in Bk. of P. H. 2/28/10, three hundred dollars and subsequent deposit 8/24/1910 .....................$302.35
"I cash Bal. with Foster & Glassell 1/27/1910, appraised at seven hundred and eighty-six 93/100 Dollars....................$786.93."

At the time of the death of John Farrell there was at his credit on the books of Foster & Glassell the sum of $770. The account bore interest at the rate of 7 per cent. per annum. According to the inventory there was a cash balance of January 27, 1910, which was appraised at $786.93.

If John Farrell wrote the will of August 22, 1910, he must have reached the balance of $786 by a calculation of interest on his account with Foster & Glassell Company. To make this calculation required a knowledge of all the debit and credit items on the account. That John Farrell made such a calculation of interest on August 16, 1910, is not credible. According to Mr. Hardee's testimony, John Farrell on that day had fever, was suffering from a large and painful sore on his back, and required assistance to get in and out of bed. Mr. Furlow, another attendant of the deceased on the same day, corroborated the testimony of Mr. Hardee as to the physical condition of John Farrell, who, in the opinion of the witness, was not able to write or to transact business of any kind. Mr. Furlow, on August 16, 1910, found $19.90 in the purse of John Farrell, and at his request kept the purse and money. Mr. Hardee further testified that while supporting Mr. Farrell in bed he noticed that Farrell's hands trembled.

Whoever wrote the will tracked the inventory as to the two amounts of cash that appear thereon. The item of $169 in purse is not sustained by a tittle of evidence, and is shown to be false by the direct testimony of Mr. Furlow, an unimpeached witness.

The numerous legatees include the heads and members of three neighboring families, the physician who attended the deceased, and "old darkey Baley," who was known to John Farrell for many years as "Bealey Williams." The residuary legatee was "the party taking estate in charge."

A greater part of the real estate was left to the "sisters of charity of Shreveport," an association which did not exist; and the balance of cash was "to be used in building Union church at progress."

John Farrell was an intelligent man, of fair education, and did not, in our opinion, write, date, or sign the crude instrument in

question, which was evidently written after the inventory was made.

In a contest over an olographic will, the probate of which has been resisted as soon as the instrument was presented, on the ground of forgery, the burden of proof of the validity of the will is on the proponents. Proof of the writing and signature of the testator by at least two credible witnesses is not sufficient, where a will is opposed or contested on the ground of forgery. In such a case all legal modes of proof and all facts and relevant circumstances must be considered. Succession of Gaines, 38 La. Ann. 123.

It is therefore ordered, adjudged, and decreed that the judgment below, of date December 1, 1910, probating the instrument, of date August 16, 1910, as the last will and testament of John Farrell, deceased, be annulled, avoided, and reversed, and it is now ordered that the opposition to the probate of said instrument filed by Edward Farrell be maintained, and that said instrument be declared to be a forgery, and the record thereof be canceled. It is further ordered that the costs of the opposition and the costs of this appeal be paid by the legatees named in said instrument.